54 F.3d 774
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Jane L TOLER, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,
Defendant-Appellee.
 No. 94-1112.
 United States Court of Appeals, Fourth Circuit.
 Argued April 6, 1995.
Decided May 17, 1995.
 
 ARGUED: Amy Ryan Alexander, APPALACHIAN RESEARCH & DEFENSE FUND, Charleston, WV, for Appellant. Margaret J. Krecke, Assistant Regional Counsel, Office of the General Counsel, DEPARTMENT OF HEALTH & HUMAN SERVICES, Philadelphia, PA, for Appellee. ON BRIEF: Kathleen Strasbaugh, APPALACHIAN RESEARCH & DEFENSE FUND, Williamson, WV; Brian J. Skinner, APPALACHIAN RESEARCH & DEFENSE FUND, Logan, WV, for Appellant. Charlotte Hardnett, Chief Counsel, Region III, Dorothea J. Lundelius, Division Chief, Office of the General Counsel, DEPARTMENT OF HEALTH & HUMAN SERVICES, Philadelphia, PA; Rebecca Betts, United States Attorney, Carol A. Casto, Assistant United States Attorney, Charleston, WV, for Appellee.
 Before MURNAGHAN, HAMILTON, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Jane Toler (Toler) instituted suit against the Secretary of Health and Human Services[1] for disabled widow's benefits under Title II of the Social Security Act (Act), contending that she had been disabled since July 15, 1985. See 42 U.S.C.A. Secs. 401-433 (West 1986 & Supp.1994). An Administrative Law Judge (ALJ) convened a hearing on Toler's suit and concluded that Toler could perform light work and was therefore not disabled. The Appeals Council denied her petition for review, so Toler filed suit in district court. The district judge referred the case to a magistrate judge, see 28 U.S.C.A. Sec. 636(b)(1) (West 1993), who recommended that the ALJ's order be affirmed. After de novo review, see id., the district judge accepted the magistrate judge's recommendation and entered summary judgment in favor of the Secretary. Toler appeals, and we affirm.
 
 I.
 A.
 
 2
 The standard for determining disability under the Act is whether Toler is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that transpired, or can be expected to transpire, for a continuous period of not less than twelve months. See 42 U.S.C.A. Secs. 402(e)(1)(B), 423(d)(1)(A). Substantial gainful activity is work that involves "significant and productive physical or mental duties; and [i]s done for pay or profit." See 20 C.F.R. Secs. 404.1510, 404.1571 (1993).
 
 
 3
 In determining whether Toler is disabled, the Secretary uses the five-step sequential process provided in 20 C.F.R. Sec. 404.1520 (1993). Under this process, the Secretary considers sequentially whether Toler: (1) is working; (2) if not, whether she has a severe impairment; (3) if so, whether that impairment meets or equals the requirements of an impairment cited in Appendix 1 which warrants a finding of disability without considering vocational factors; (4) if not, whether the impairment prevents her from performing her past relevant work; and (5) if so, the burden shifts to the Secretary to determine whether she can perform other work. See 20 C.F.R. Sec. 404.1520 (1993). Toler shoulders the burden of demonstrating steps (1)-(4), and by satisfying either steps (3) or (4), she establishes a prima facie case of disability. If Toler establishes a prima facie case, the burden then shifts to the Secretary to determine whether she is able to perform other work considering her physical and mental capabilities and her vocational capabilities. See 20 C.F.R. Sec. 404.1520(e), (f).
 
 B.
 
 4
 The standard of review applicable to this case is limited to whether the findings of the ALJ are supported by substantial evidence. See Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence means " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence consists of more than a scintilla of evidence but may be less than a preponderance. See id. As we explained in Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984), "[i]f there is evidence to justify a refusal [to enter judgment as a matter of law] were the case before a jury, then there is 'substantial evidence.' " We must sustain the ALJ's decision, even if we disagree with it, provided it is supported by substantial evidence. See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir.1986). The duty to resolve conflicts in the evidence rests with the ALJ, not the reviewing court. See Kasey v. Sullivan, 3 F.3d 75, 79 (4th Cir.1993). Our standard of review, therefore, is extremely deferential. With these standards of establishing disability and appellate review in mind, we turn to Toler's claim.
 
 II.
 
 5
 Our ultimate duty is to determine whether there is substantial evidence to support the ALJ's conclusion that Toler is not disabled. Our review of the record compels us to affirm.
 
 A.
 
 6
 In reaching his conclusion that Toler was not disabled, the ALJ determined that the objective medical evidence compelled the conclusion that Toler could perform unskilled light work, and thus was not disabled. In support of the ALJ's conclusion with respect to the medical evidence, the record reveals that while there is medical evidence demonstrating that Toler suffers from various afflictions, none of the physicians stated or testified that Toler is disabled. Dr. Usha Reddy, Toler's treating physician, informed the Secretary that she "d[id] not have medical evidence to prove any restrictions for [Toler]." (J.A. at 265). Being Toler's treating physician, Dr. Reddy's opinion can be accorded considerable weight, provided it is well-supported by accepted diagnostic techniques and is not inconsistent with other substantial evidence of record. See 20 C.F.R. Sec. 404.1527(d)(2) (1993); see also Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir.1986) (stating that if treating physician has treated claimant over a period of time, his opinion is entitled to deference). Additionally, Dr. Reddy's opinion is buttressed by other medical opinions. For instance, on April 4, 1991, Dr. Mark Carter reported that "[t]here is no significant permanent disability at this time." (J.A. at 187). Dr. Carter noted that while Toler had various ailments, she was not disabled, and Dr. Erwin Chillag stated that while Toler had mild disc bulging, she had no impairment of muscle or nerve functioning that equalled any of those enumerated under the Act. Dr. Hatem Hossino opined, and Drs. Carter and Chillag concurred, that Toler's carotid artery disease was not sufficiently significant to be symptomatic in light of normal blood flow on ocular plethysmography. The medical evidence, therefore, demonstrated that Toler was not disabled.
 
 B.
 
 7
 The ALJ found that the Secretary established that Toler was not disabled by proving through the testimony of a Vocational Expert (VE) that a person with Toler's functional limitations could perform unskilled light work, see 20 C.F.R. # 8E8E # 404.1567(b), 404.1568(a) (1993). In determining whether Toler was disabled, the ALJ posed a question to the VE asking whether, based on the medical evidence regarding Toler's condition, she was capable of performing work. Toler mounts essentially two challenges to the question posed by the ALJ: (1) the question did not reflect all of Toler's ailments, principally her complaints of urinary frequency and pain; and (2) Toler is incapable of performing the work the VE opined she could perform, even assuming the propriety of the ALJ's question. This second contention is principally premised on the assertion that she is incapable of performing multiplication.
 
 The question posed by the ALJ was:
 
 8
 Assume that I were to find that the claimant is 50-plus years old, has a ... ninth grade education with the ability to read, write and use numbers. Assume further that I find in general that she has the--or had the physical capacity to perform light work. Assume that I find that at that time she would have had to stand up or sit down alternatively from time to time at her discretion in order to relieve her pain and other symptomatology.
 
 
 9
 Assume further that, that she would only have been able to stoop on an occasional basis and bend on an occasional basis and that she would not be able to, to work at heights or around moving machinery. Assume further that I also find functional limitations based on mental diagnosis of mild anxiety with, with slight to moderate concentration limitations and that she would be moderately impaired in, in her ability to understand, remember and carry out detailed instructions.
 
 
 10
 Assume further that, that she would have been afflicted with chronic pain substantial enough to be noticeable to her at all times but that even though she could be attentive and she could carry out matters assigned to her. Can you identify ... any occupations existing in the regional or national economy that you think can be performed by a person with these limitations?
 
 
 11
 (J.A. at 75). The VE responded that a person with these functional limitations could perform the following jobs: (1) cafeteria attendant; (2) cleaner in a hospital;[2] (3) price marker in a wholesale/retail trade outlet; (4) produce weigher, marker in a retail trade industry; and (5) a deli cutter/slicer in the food service industry; and that these jobs were locally available to Toler.
 
 
 12
 First, Toler asserts the question is invalid because it fails to include her complaint of urinary frequency and inadequately reflects that her pain prevents her from sitting or standing for extended periods of time. While questions posed to a VE must "fairly set out all of claimant's impairment," Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.1989), the questions need only reflect those impairments that are supported by the record, see Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir.1987). Here, there was no objective medical evidence of urinary frequency. Because there was no support for this condition in the record, the ALJ did not err in failing to cite it as a limitation in his question. With respect to Toler's complaints of pain that prevent her from sitting or standing for extended periods, the ALJ's inclusion of the sit/stand option implicitly accommodates Toler's complaints by permitting her to change positions. Moreover, the ALJ's inclusion of a sit/stand option is more restrictive than the opinion of Dr. Reddy, who concluded that Toler had no restrictions. Our review of the question leads us to conclude that the question sufficiently entailed all of Toler's limitations that were supported by medical evidence.
 
 
 13
 Second, Toler posits that she is incapable of performing the other jobs because they all require the ability to multiply and divide. While the mathematical requirements for these positions are minimal, Toler maintains that they exceed her mathematical ability. Toler testified that she could add and subtract, but when questioned about her ability to multiply, she responded, "No, I'm not good with that," stating that she had not memorized her multiplication tables. (J.A. at 41). Toler, therefore, merely testified that she "was not good" at multiplying, not that she was incapable of doing it.
 
 
 14
 The Dictionary of Occupational Titles, published by the Department of Labor and used by the Secretary to determine skills, see 20 C.F.R. Sec. 404.1567 (1993), provides that, with the exception of the produce weigher, the other jobs require that Toler be able to "[a]dd, subtract, multiply, and divide all units of measure. Perform the four operations with like common and decimal fractions. Compute ratio, rate, and percent. Draw and interpret bar graphs. Perform arithmetic operations involving all American monetary units." Dictionary of Occupational Titles Appendix C.III 1011 (4th rev. ed.1991). The produce weigher, however, only requires that Toler be able to "[a]dd and subtract two digit numbers. Multiply and divide 10's and 100's by 2, 3, 4, 5. Perform the four basic arithmetic operations with coins as part of a dollar." Id.
 
 
 15
 While Toler may have limited mathematical ability, she can certainly "use" numbers, as her testimony revealed and as the ALJ's question supposed. We are satisfied that the ALJ's question sufficiently characterized Toler's mathematical skills. Here, Toler merely testified that she was averse to multiplying, not that it was beyond her ability; moreover, she testified that she could add and subtract. The record, therefore, reveals that she exhibited sufficient mathematical skill to fill positions cited by the VE, particularly the produce weigher.
 
 III.
 
 16
 Like the ALJ, the magistrate judge, and the district judge, we conclude that substantial evidence supports the conclusion that Toler is not disabled. Accordingly, the judgment is affirmed.
 
 AFFIRMED
 
 
 [1]
 On March 31, 1995, the Social Security Administration became an independent agency, separating from the Department of Health and Human Services pursuant to Sec. 106(d)(2) of the Social Security Independence and Program Improvement Act, Pub.L. No. 103-296, 108 Stat. 1464, 1477 (1994). As of that date, Shirley S. Chater, Commissioner of Social Security, was substituted for Donna E. Shalala, Secretary of Health and Human Services. Because all of the events relative to this suit transpired prior to this change, we refer to the Secretary throughout the opinion
 
 
 [2]
 Toler appears to be barred from performing work as a cleaner in a hospital because that position requires medium work, see, Dictionary of Occupational Titles 248 (4th rev. ed.1991), and the ALJ determined that she could perform light work